# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| RESIDENTIAL MORTGAGE LOAN TRUST 2013-TT2, BY U.S. BANK NATIONAL ASSOCIATION, )<br><br>PLAINTIFF )<br><br>V. )<br><br>JOANE K. LLOYD, ET AL., )<br><br>DEFENDANTS )<br><br>GLENNIS J. LLOYD,<br>BIW FIVE COUNTY CREDIT UNION,<br>DJM, LLC,<br>SNOWFLAKE HOLDINGS F/K/A<br>DOWNEAST ENERGY, )<br><br>PARTIES-IN-INTEREST ) | CIVIL NO. 2:15-CV-466-DBH |

## DECISION AND ORDER ON DEFENDANT JOANE K. LLOYD'S MOTION TO DISMISS ON ABSTENTION GROUNDS AND REQUEST FOR JUDICIAL NOTICE

This case presents the question whether the abstention doctrine announced in Burford v. Sun Oil Co., 319 U.S. 315, 331-33 (1943), applies to a legislatively and judicially created program governing Maine's residential foreclosure process. After oral argument on April 20, 2016, I conclude that the circumstances here do not overcome this court's virtually unflagging obligation to exercise jurisdiction where it exists, and I **DENY** the defendant's motion to dismiss based on Burford abstention.

### PROCEDURAL HISTORY

The plaintiff Residential Mortgage Loan Trust 2013-TT2, by U.S. Bank of America as legal title trustee (hereafter "Residential Mortgage") brought a complaint in this court alleging six counts against the defendant Joane K. Lloyd[1] for foreclosure (Count I), breach of note (Count II), breach of contract (Count III), quantum meruit (Count IV), unjust enrichment (Count V), and Writ of Assistance pursuant to 28 U.S.C.A. § 1651 (2006 & Supp. 2015) (Count VI). In essence the lawsuit seeks to collect on the Note and foreclose the mortgage on the defendant's house. The defendant Joane Lloyd responded by filing a motion to dismiss, arguing that this federal court should abstain, under <u>Burford v. Sun Oil Co.</u>, from exercising its jurisdiction because the Maine Foreclosure Diversion Program, devised jointly by the legislative and judicial branches of Maine, has created a pretrial mediation process involving a matter of "ongoing critical public policy" with procedures impossible to replicate in the federal system. Def.'s Mot. to Dismiss on Abstention Grounds at 11, 19 (ECF No. 9).

In February, I held a conference with counsel to discuss the proper mechanism for creating the factual record upon which I could base my decision on the motion to dismiss. Thereafter, the defendant submitted evidence in the form of affidavits from various people involved in Maine's Foreclosure Diversion Program, <u>see</u> Affs. in Support of Def.'s Mot. to Dismiss (and attached exhibits) (ECF No. 34-37), and requested that I take judicial notice, pursuant to Fed. R. Civ. P. 201, of six "facts" related to the origin of the Foreclosure Diversion

---

[1] Another defendant, Robert G. Wade, has been dismissed as a defendant, and default has entered against the parties-in-interest.

Program and the interaction of the Maine Legislature and Judiciary to create a comprehensive framework for foreclosure cases in Maine, see Def.'s Request for Judicial Notice (ECF No. 38). The plaintiff opposed the defendant's motion to dismiss, arguing that Burford is inapplicable to this case because there is no separate and distinct *administrative* body charged with reviewing foreclosures in Maine (and thus no threat of federal interference with a state regulatory system) and because this District's local rule addressing alternative dispute resolution is capable of replicating the mediation processes in the Foreclosure Diversion Program. See Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2, 7-8 (ECF No. 19); Pl.'s Opp'n to Def.'s Mem. Regarding Evidence Offered in Support of Mot. to Dismiss On Abstention Grounds & Reply to Request for Judicial Notice at 5-7 (ECF No. 46). I heard oral argument on the defendant's motion on April 20, 2016.

## BACKGROUND

After the housing crisis a few years ago, Maine's Foreclosure Diversion Program was established in response to the substantial increase of foreclosure matters in state courts. See L.D. 1418, Emergency Preamble (124th Legis. 2009). Title 14, section 6321-A of the Maine Revised Statutes, enacted as emergency legislation in 2009, instructed the Supreme Judicial Court of Maine to adopt rules to "establish a foreclosure mediation program to provide mediation in actions for foreclosure of mortgages on owner-occupied residential property with no more than 4 units that is the primary residence of the owner-occupant." 14 M.R.S.A. § 6321-A(3) (Supp. 2015); see P.L. 2009, ch. 402, § 18 (emergency, effective June 15, 2009). The statute directed that the foreclosure mediation

program "must address all issues of foreclosure, including but not limited to reinstatement of the mortgage, modification of the loan and restructuring of the mortgage debt." 14 M.R.S.A. § 6321-A(3). Through section 6321-A, the Maine Legislature aimed to create a simple, stream-lined process for unrepresented Maine homeowners who wanted to participate in mediation: specifically requiring that homeowners receive, with the summons and complaint for foreclosure actions, a one page answer form that constituted a complete answer to the foreclosure complaint, gave the homeowner the opportunity to assert all affirmative defenses, and ensured participation in mediation. See id. § 6321-A(2). The statute mandates the following:

- The state court must assign mediators to the program who "[a]re trained in mediation and relevant aspects of the law related to real estate, mortgage procedures, foreclosure or foreclosure prevention; [h]ave knowledge of community-based resources that are available in the judicial districts in which they serve; [h]ave knowledge of mortgage assistance programs; [a]re trained in using the relevant Federal Deposit Insurance Corporation forms and worksheets; [a]re knowledgeable in principal loss mitigation and mortgage loan servicing guidelines and regulations; and [a]re capable of facilitating and likely to facilitate identification of and compliance with principal loss mitigation and mortgage loan servicing guidelines and regulations," id. § 6321-A(7)(A);[2]

---

[2] This description reflects the subsection as amended in 2014, after Maine's Attorney General conducted a comprehensive study of Maine's foreclosure process and generated a report to present to the Judiciary Committee for recommendations on how to create a more efficient and effective Foreclosure Diversion Program. See Attorney Janet Mills Foreclosure Report, Joint Standing Committee on the Judiciary (Jan. 2014), available at https://www1.maine.gov/ag/docs/2014.01.30%20AG%20Mills%20Foreclosure%20Report.pdf (ECF No. 38 (attached as exhibits 1-3)). Based on the recommendations in that report, the Legislature amended subsection seven to heighten the qualifications for mediators in the program—specifying that they must be trained in real estate, mortgage, and foreclosure law, and be knowledgeable in principal loss mitigation and mortgage loan servicing guidelines and regulations. See P.L. 2013, ch. 521, § F-1.

- The mediator, at any time during the process, can refer the homeowner to a housing counselor or mortgage assistance program, id. § 6321-A(8);

- A final judgment in a foreclosure action may not issue until a mediator's report has been completed indicating whether the mediation resulted in settlement or dismissal, whether the parties reached any agreements during mediation, whether either party failed to negotiate in good faith, and the time frames established by the parties for all actions to be taken, id. § 6321-A(9), (13);

- Certain parties must appear at the mediation, id. § 6321-A(11); and

- "Each party and each party's attorney . . . shall make a good faith effort to mediate all issues.  If any party or attorney fails to attend or to make a good faith effort to mediate, the court may impose appropriate sanctions," id. § 6321-A(12).

In response to the Legislature's directive, the Supreme Judicial Court of Maine adopted Rule 93 of the Maine Rules of Civil Procedure in 2010, which created the Foreclosure Diversion Program.  See M.R. Civ. P. 93.  The Program, managed by an employee of the Maine Judicial Branch, is a comprehensive mediation process for foreclosures in Maine.  See id. 93(b)(2).  In addition to the requirements of section 6321-A, Rule 93 authorizes the implementation of "informational sessions" for homeowners faced with foreclosure to ensure that homeowners have the necessary information regarding foreclosure proceedings and the diversion program, M.R. Civ. P. 93(c)(2); prohibits a mortgagee from filing any dispositive motions or requests for admissions prior to the completion of mediation "or until the court orders that mediation shall not occur," id. 93(d)(1); requires the presence at mediation of "the plaintiff, or a representative of the plaintiff, who has the authority to agree to a proposed settlement, loan

modification, or dismissal of the action," id. 93(h)(1)(D); authorizes the mediator to conduct multiple sessions at court locations throughout the state to effectively guide the parties through the diversion program, id. 93(i), (l); and allows the court, if it finds that a party "fail[ed] to attend or to make a good faith effort to mediate," to order sanctions including, but not limited to, "tolling of interest and other charges pending completion of mediation, assessment of costs and fees," awarding attorney fees, entry of judgment, dismissal without prejudice, and/or dismissal with prejudice, id. 93(j).  Mediation through the Foreclosure Diversion Program is mandatory for those who fall under the ambit of section 6321-A, and only the homeowner/mortgagor, upon a finding by the court that there is good cause and that the homeowner/mortgagor is making a "free choice," may waive mediation under the Rule.  M.R. Civ. P. 93(m); see 14 M.R.S.A. § 6321-A(2).

### JURISDICTION

This case does not involve any federal cause of action or question of federal law.[3]  This court has subject-matter jurisdiction based purely on diversity of citizenship, and the amount in controversy exceeds the jurisdictional amount. 28 U.S.C.A. § 1332 (2009 & Supp. 2015).

---

[3] Count VI—Writ of Assistance—purports to be based on a federal statute, 28 U.S.C.A. § 1651. Section 1651 provides: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Count VI states that the plaintiff "seeks the issuance of a Writ of Assistance, to enforce the foregoing money judgment, and authorizing the United States Marshal Service . . . to take any and all necessary steps to execute the foregoing judgment . . . ."  Compl. ¶ 74 (ECF No. 1). But at oral argument, the plaintiff's lawyer conceded that there is no "foregoing money judgment" as yet, and that this claim is premature.  I therefore treat Count VI as withdrawn.  If it were not withdrawn, I would dismiss it.

### ANALYSIS

I begin by addressing the defendant's request to accept as evidence the affidavits submitted in support of her motion to dismiss and her request for judicial notice.  At oral argument, the plaintiff admitted that the information in the documents was accurate. But the plaintiff maintains that, even if that information is correct, Burford abstention is not warranted.   Because the accuracy of this information is not contested, I accept the facts as submitted.  I note, however, that these facts are not susceptible to judicial notice under Fed. R. Civ. P. 201 because they are not adjudicative facts and therefore do not fall within the scope of that rule.  See Fed. R. Civ. P. 201 advisory committee's note to 1972 (detailing that the rule applies only to adjudicative facts, which "are simply the facts of the particular case," and not legislative facts, which "are those which have relevance to legal reasoning and the law-making process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body"); Chico Service Station, Inc. v. Sol P.R. Ltd., 633 F.3d 20, 23 n.1 (1st Cir. 2011) (drawing the facts of a Burford abstention case on appeal "from the district court's opinion as well as various documents submitted below in support of the defendant's motion to dismiss"); see also Getty Petroleum Mktg., Inc. v. Capital Terminal Co., 391 F.3d 312, 321-23 & n.12 (1st Cir. 2004) (Lipez, J., concurring) (discussing the "doctrine of judicial notice" generally and its application to adjudicative versus legislative facts).

The difficult question is the applicability of the abstention doctrine announced in Burford v. Sun Oil Co.  In Burford, Sun Oil Company attacked the

validity of an order of the Texas Railroad Commission granting Burford a permit
to drill wells in an East Texas oil field.  319 U.S. at 316-17.  The Supreme Court
ordered the "federal equity court to stay its hand" because the Texas legislature
had provided

> a unified method for the formulation of policy and
> determination of cases by the Commission and by the state
> courts.  The judicial review of the Commission's decision . . .
> is expeditious and adequate.  Conflicts in the interpretation
> of state law, dangerous to the success of state policies, are
> almost certain to result from the intervention of the lower
> federal courts.

Id. at 333-34.  That approach has become known as Burford abstention.  Over
the years, the Supreme Court has polished the holding of Burford into the
following test:

> Where timely and adequate state-court review is available, a
> federal court sitting in equity must decline to interfere with
> the proceedings or orders of state administrative agencies:
> (1) when there are 'difficult questions of state law bearing on
> policy problems of substantial public import whose
> importance transcends the result in the case then at bar'; or
> (2) where the 'exercise of federal review of the question in a
> case and in similar cases would be disruptive of state efforts
> to establish a coherent policy with respect to a matter of
> substantial public concern.'

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)
("NOPSI") (quoting Colo. River Water Conservation Dist. v. United States, 424
U.S. 800, 814 (1976)).

The First Circuit has faithfully adhered to the Supreme Court's direction
regarding the circumstances where Burford abstention is appropriate,
recognizing that "[a]s the common refrain goes, 'federal courts have a virtually
unflagging obligation . . . to exercise the jurisdiction given them.'"  Chico Serv.
Station, Inc., 633 F.3d at 29 (quoting Ankenbrandt v. Richards, 504 U.S. 689,

705 (1992) (internal quotation marks omitted)).  The First Circuit has repeatedly stated that abstaining under <u>Burford</u> is only for "exceptional circumstances." <u>Id</u>. "As a general proposition, these 'exceptional circumstances' lie 'where denying a federal forum would clearly serve an important countervailing interest,' such as 'regard for federal-state relations' or 'wise judicial administration.'" <u>Id</u>. (quoting <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996) (internal quotation marks omitted)).

As the defendant acknowledged at oral argument, the Supreme Court and First Circuit have held that these "exceptional circumstances" exist when the matter before the federal court involves a state administrative scheme or the review of substantive orders from state administrative agencies: [4] "'The fundamental concern in <u>Burford</u> is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution.'" <u>Sevigny v. Emp'rs Ins. of Wausau</u>, 411 F.3d 24, 27 (1st Cir. 2005) (quoting <u>Pub. Serv. Co. of N.H. v. Patch</u>, 167 F.3d 15, 24 (1st Cir. 1998)); <u>see</u> <u>Fragoso v. Lopez</u>, 991 F.2d 878, 883 (1st Cir. 1993) (holding that <u>Burford</u> and its progeny "shield[ ] state administrative agencies from federal court interference" (internal quotation

---

[4] The only exception that I have found to this general proposition—where <u>Burford</u> has been applied even *without* a state administrative scheme at issue or the review of an order from an administrative body—is in cases involving "sensitive legal questions about the duties and privileges of parties to a then existing marriage." <u>Dunn v. Cometa</u>, 238 F.3d 38, 42 (1st Cir. 2001); <u>see</u> <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 706 (1992) ("[T]he abstention principles developed in [<u>Burford</u>] might be relevant . . . if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties."). Federal recognition of the states' autonomy regarding regulating and overseeing domestic relationships, however, is unparalleled. To use this narrow exception to justify applying <u>Burford</u> to the present case would paint with too broad a brush.

marks omitted)).  But there is no state administrative scheme at issue here (Maine could have created one, in lieu of the scheme it did create through the legislative and judicial branches, but it did not), and I am not being asked to review an order from a state adjudicative body, administrative or judicial.

"While <u>Burford</u>'s principle of deference to state administrative bodies could be interpreted expansively, requiring that federal courts abstain from hearing any case involving important state regulatory policies, [the First Circuit has] declined to give it so broad a reading."  <u>Chico Serv. Station, Inc.</u>, 633 F.3d at 29-30 (internal quotation marks and citation omitted).  The First Circuit has "cautioned that the <u>Burford</u> doctrine does not require abstention merely because the federal action may impair operation of a state administrative scheme or overturn state policy."  <u>Id</u>. at 30; <u>see</u> <u>Fragoso</u>, 991 F.2d at 882 (noting that, under the formulation in <u>NOPSI</u>, <u>Burford</u> abstention is limited to "narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate"); <u>see also</u> <u>Sevigny</u>, 411 F.3d at 29 ("[D]ifficult state law questions alone are not enough for Burford abstention.").  Rather, "[i]n light of the strong presumption in favor of the exercise of jurisdiction . . . <u>Burford</u> abstention must only apply in unusual circumstances, when federal review risks having the district court become the *regulatory decision-making center*."  <u>Chico Serv. Station, Inc.</u>, 633 F.3d at 30 (emphasis added) (internal quotation marks omitted).  There is no such risk here.

I would be delighted to leave Maine home foreclosures to the state courts, and I am sympathetic to the defendant's judicial and public policy argument—it is clear that the mediators in Maine's Foreclosure Diversion Program have been trained and have developed specialized knowledge in this area of law. Absent explicit waiver by the defendant homeowner, mediation is required, M.R. Civ. P. 93(c), (m), and Maine's trial courts have accumulated a body of case law, developing rapidly, to determine when financial institutions are mediating in good faith, as required by Maine Rule of Civil Procedure 93(j), and if not, have ordered appropriate sanctions. See U.S. Bank v. Sawyer, 2014 ME 81, ¶¶ 14-17, 95 A.3d 608, 611-12 (and cases cited therein); Bank of N.Y. Mellon v. Chase, No. RE-13-03, 2016 Me. Super. Ct. (Feb. 22, 2016) (recent trial court order for sanctions when a financial institution failed to mediate in good faith over a period including eight mediation sessions and two notices of noncompliance with the Foreclosure Diversion Program). None of that is available in federal court. Moreover, I do not accept the plaintiff's contention that the District of Maine's local rules are adequate to replicate the state mediation program (I have no authority to order the parties to mediate in a similar fashion with a mediator of my choosing who would have such specialized knowledge, see Local Rule 83.11).

Nevertheless, at the end of the day, Maine has chosen to have a foreclosure system that uses court lawsuits, not administrative proceedings, and when the parties to a lawsuit are diverse in their citizenship, the Constitution and Congress have chosen to give federal courts jurisdiction (if the jurisdictional amount in controversy is satisfied). U.S. CONST. art. III, § 2; 28 U.S.C.A. § 1332.

The Maine statutes and the Law Court's decisions establish the substance of state law, and this federal court can and will apply it.  Over the last few years, the Maine Law Court has provided substantial guidance in resolving issues involving mortgages and foreclosures, and this court will steadfastly apply the substantive law the Maine Law Court and the Maine Legislature have mandated, as required by Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  I recognize that the state justices of Maine may well be more competent at mediating and settling these cases and that the Foreclosure Diversion Program is undoubtedly far more sophisticated than any that this federal court can offer, but that difference does not justify denying an out-of-state plaintiff its right to a federal forum.

I also recognize that the First Circuit has questioned whether a "comprehensive framework" established by a state to handle a certain area of law, in and of itself, "creates a state administrative agency, as opposed to a judicial structure, to which deference under Burford may be paid," Fragoso, 991 F.2d at 883, or whether certain state "schemes" could be "analogized to an agency" for purposes of applying the Burford doctrine, Sevigny, 411 F.3d at 28. Justice Kennedy, in a Supreme Court concurring opinion, stated that "[t]he fact that a state court rather than an agency was chosen to implement [a state's] scheme provided *more* reason, not less, for the federal court to stay its hand." Quackenbush, 517 U.S. at 733 (Kennedy, J., concurring) (emphasis added). Perhaps the First Circuit will conclude that Maine's Foreclosure Diversion Program is the kind of state "scheme" with which the federal courts should not

interfere out of principles of comity.  See id. at 725-26; see also Fed. Home Mortg. Loan Corp. v. Briggs, 556 F. App'x 557, 558 (8th Cir. 2014) (holding that the district court did not abuse its discretion in abstaining under Burford because Minnesota's "eviction statutes provide a comprehensive and detailed framework for the efficient processing by the Minnesota courts of large numbers of eviction actions"); Fed. Home Loan Mortg. Corp. v. Litano, No. 15-CV-10019-MAP, 2015 WL 3632334, at *2 (D. Mass. June 1, 2015) ("State courts undeniably have far more experience than federal courts with the procedural and substantive niceties of eviction practice.   For this reason, absent the strong statutory-based argument, the court might well conclude that abstention would be appropriate here under Burford."); Ocwen Loan Servicing, LLC v. Mickna, No. 5:14-CV-05330, 2015 WL 685264, at *6 (W.D. Ark. Feb. 17, 2015) (in light of the fact that "Arkansas law governing foreclosure and eviction actions is highly developed, governs here, and the State court has expertise in this area, the Court holds that even if federal subject-matter jurisdiction were proper, it would abstain.").[5]  But

---

[5] See generally Gordon G. Young, Federal Court Abstention and State Administrative Law From Burford to Ankenbrandt: Fifty Years of Judicial Federalism under Burford v. Sun Oil Co., and Kindred Doctrines, 42 DEPAUL L. REV. 859 (1993).  Among other observations, Professor Young noted: "Most courts have continued to apply Burford to cases in which scrutiny of state administrative agency action is sought, often suggesting that Burford has no application beyond such a context." Id. at 901.   Regarding the Supreme Court's decision in NOPSI, Professor Young said that the Court "seemed to change the basic scope of Burford abstention. Describing that doctrine as designed to avoid 'interference with the proceedings or orders of state administrative agencies,' the Court appeared to limit its use to cases involving such entities." Id. at 910-11. (quoting NOPSI, 491 U.S. at 361).  But Professor Young was critical of that limitation.  Id. at 913. He also noted:

> Most opinions discussing the doctrine acknowledge the Supreme Court's clearly stated policy that such abstention is to occur only in extraordinary circumstances. Despite this, some courts of appeals have affirmed federal district court decisions to abstain in cases not involving state administrative agencies, based upon the presence of complex and unclear state law.

Id. at 900 (footnote omitted).

neither the Supreme Court not the First Circuit has yet reached such a conclusion.

It is my constitutional duty as a United States District Court Judge to exercise jurisdiction unless the Supreme Court and the First Circuit have interpreted the law to allow me to abstain.  There is no state administrative scheme at issue here, and the defendant is not asking me to review any substantive order from any adjudicative body.  The issues presented in this case "are not so intertwined with issues of agency authority or state regulatory policy that their federal-court resolution would imperil a complex regulatory scheme." Sevigny, 411 F.3d at 29.  Given the First Circuit's recent examination of the Burford abstention doctrine in Chico Service Station, Inc. v. Sol Puerto Rico Ltd. and the cases cited therein, I conclude that under the governing precedents this case does not present the exceptional circumstances where Burford abstention is appropriate.

CONCLUSION

I **DENY** the defendant's motion to dismiss based on Burford abstention.

**SO ORDERED.**

**DATED THIS 29TH DAY OF APRIL, 2016**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

14